**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MUHANED AL-GOUDI AL-HASANI., *Plaintiff*, v. ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security; TRACY RENAUD, Acting Director, U.S. Citizenship & Immigration Services; PAULO CORREIA, Newark Field Office Director, U.S. Citizenship & Immigration Services, *Defendants*. | Civil Action No. 20-8984 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter arises out of Plaintiff's Petition for Review pursuant to 8 U.S.C. § 1421(c), Immigration and Naturalization Act ("INA") § 310(c), challenging the denial of his naturalization application by U.S. Citizenship and Immigration Services. Plaintiff Muhanad Al-Goudi Al-Hasani ("Al-Hasani") and Defendants Alejandro Mayorkas, Tracy Renaud, and Paulo Correira (collectively "USCIS") submitted cross-motions for summary judgment. D.E. 19, D.E. 20. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' cross-

---

[1] Plaintiff's corrected brief in support of his cross-motion for summary judgment, D.E. 21 ("Pl. Br."); Defendants' opposition brief, D.E. 22 ("Def. Opp."); Plaintiff's reply brief, D.E. 26 ("Pl. Reply"); Defendants' brief in support of their cross-motion for summary judgment, D.E. 19-1 ("Def. Br."); Plaintiff's opposition brief, D.E. 23; and Defendants' reply brief, D.E. 25.

motion for summary judgment is **GRANTED** and Plaintiff's cross-motion for summary judgment is **DENIED**.

I. BACKGROUND[2]

The facts of this matter are largely undisputed. Al-Hasani is a citizen of Syria. Pl. SOMF ¶ 1. In 2003, Al-Hasani married his first wife Sabah Khalili, a Moroccan national living and working in Syria at the time. *Id.* ¶ 2. After Khalili became pregnant, she returned to Morocco and gave birth to their son A.L in 2004. *Id.* ¶ 3. In 2005, Al-Hasani married his second wife Hiam Jouni, with whom he has a second son. *Id.* ¶ 7. Under Syrian law, Al-Hasani was not required to divorce his first wife in order to marry his second. *Id.*

In 2009, Al-Hasani was arrested and jailed on political charges. *Id.* ¶ 6. Several months after Al-Hasani was released from prison, he was forced to flee Syria after Wikileaks published information naming him as a source to the U.S. embassy in Damascus on human rights conditions in Syria. *Id.* ¶ 9. In 2011, Al-Hasani arrived in the United States after the United States government helped arrange for his parole. *Id.* ¶¶ 9-10. He has been a lawful permanent resident in the United States since October 2012. *Id.* ¶ 10.

Mr. Al-Hasani testified during his naturalization proceedings that when he fled Syria in 2011, his second wife Jouni stayed behind with their son. *Id.* ¶ 12. He has not seen Jouni since that time. *Id.* Al-Hasani further testified that after he arrived in the United States, his first wife Khalili and their son A.L. joined him in the United States for a time before they returned to

---

[2] The factual background is taken from Plaintiff's Statement of Material Facts, D.E. 24 ("Pl. SOMF") and Defendants' Statement of Material Facts, D.E. 19-5 ("Def. SOMF").

Morocco in 2016 to care for Khalili's sick mother. *Id.* ¶¶ 13-14. Al-Hasani has been separated from Khalili and A.L. since then. *Id.* ¶ 14.

In September 2017, Al-Hasani applied for naturalization and disclosed the fact of his two marriages. *Id.* ¶ 15. On August 22, 2019, USCIS denied Al-Hasani's naturalization application on the grounds that he could not establish good moral character because he was married to two women. *Id.* ¶ 18. On Al-Hasani's request, USCIS conducted a review hearing. *Id.* ¶ 19. During the review hearing, Al-Hasani testified that he "was married but not in an active relationship with two people at the same time." *Id.* ¶ 20. He also explained that he had not obtained a divorce from his first wife before marrying his second because that would cause their child A.L. to feel separated from him and would create inequality in the treatment of his two sons. *Id.* ¶¶ 20, 22. Al-Hasani further testified that he would be unable to terminate his second marriage in the courts of New Jersey because the marriage was not recognized here or in the Syria because the Syrian government has prevented him from appointing counsel there in retaliation. *Id.* ¶ 21. On March 17, 2020, USCIS again denied Al-Hasani's naturalization on the same grounds. *Id.* ¶ 19. Al-Hasani has exhausted his administrative options. *Id.* ¶ 23.

On July 15, 2020, Plaintiff commenced the present action seeking review of USCIS's denial of his naturalization application. D.E. 1. The current cross-motions for summary judgment followed. D.E. 19, D.E. 20.

## II.   STATUTORY FRAMEWORK

In order to receive naturalization approval, an applicant must, among other things, be "a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States" for the five years before the filing of the application and up to the time of admission to citizenship. 8 U.S.C. § 1427(a)(3).

The INA provides a non-exhaustive list of classes of applicants who are precluded from establishing "good moral character." *See* 8 U.S.C. § 1101(f). This list includes "any immigrant who is coming to the United States to practice polygamy." 8 U.S.C. § 1182(a)(10)(A). USCIS regulations implementing the INA's bar against practicing polygamists provide that an applicant lacks good moral character if the applicant "has practiced or is practicing polygamy" during the statutory period preceding the naturalization application. 8 C.F.R. § 316.10(b)(ix).

### III.     LEGAL STANDARD

The Court reviews *de novo* challenges to USCIS's denial of a naturalization application pursuant to 8 U.S.C. § 1421(c). *See Leiva*, 230 F. Supp. 3d at 414.

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Id.* at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250-51.

IV. ANALYSIS

"An applicant for naturalization has the burden of proving 'by a preponderance of the evidence that he or she meets all of the requirements for naturalization.'" *Leiva v. Sec'y of Dep't of Homeland Sec.*, 230 F. Supp. 3d 406, 414 (D.N.J. 2017) (citing 8 C.F.R. § 316.2(b) and *Bagot v. Ashcroft*, 398 F.3d 252, 256-57 (3d Cir. 2005)). In a naturalization proceeding, "all doubts about eligibility are resolved in favor of the Government." *Kadirov v. Sec'y U.S. Dep't of Homeland Sec.*, 627 F. App'x 125, 127 (3d Cir. 2015) (citing *Berenyi v. District Director, Immigration and Naturalization Service*, 385 U.S. 630, 637 (1967)).

As an initial matter, Defendants note that the Court may deny Plaintiff's cross-motion for summary judgment due to Plaintiff's failure to submit an accompanying statement of material facts not in dispute, as required by Local Civil Rule 56.1. *See* Def. Opp. at 2. Plaintiff concedes that he failed to submit a statement of undisputed material facts with his moving papers. Pl. Reply at 2. However, upon being alerted to this issue by Defendants' opposition brief, Plaintiff promptly filed his statement of undisputed material facts. *See* D.E. 24. Therefore, the Court will not deny Plaintiff's cross-motion for summary judgment on this ground and will adjudicate the summary judgment cross-motions on the merits. *See Boswell v. Eoon*, 452 F. App'x 107, 111 (3d Cir. 2011) ("[T]he purpose of certain district court local rules pertaining to motions is the facilitation of the court's disposition of motions, not punishment.") (internal quotation omitted).

**A. Whether USCIS Misapplied the INA and USCIS Regulations**

Turning to the merits, the parties do not dispute that the governing USCIS regulations provide that an applicant for naturalization lacks good moral character if he or she "has practiced or is practicing polygamy" during the statutory period preceding a naturalization application. 8 C.F.R. § 316.10(b)(ix); Pl. Br. at 3; Def. Br. at 7. However, the parties disagree on whether Al-

Hasani's remaining in legal marriages with two women constitutes "practicing polygamy." Defendants assert that "[b]y definition, Plaintiff is practicing polygamy" because "[u]nequivocally, Plaintiff is still married to both Khalili and Jouni." Def. Br. at 6, 7. In support, Defendants cite to Black's Law Dictionary, which defines "polygamy" as "[t]he state or practice of having more than one spouse simultaneously," and the USCIS Policy Manual, which defines "polygamy" in the immigration context as "the custom of having more than one spouse at the same time." *Id.* at 5.

Plaintiff, on the other hand, contends that the INA and applicable regulations "reflect a distinction between being in a legal marriage with more than one person and the practice of polygamy." Pl. Br. at 7. Al-Hasani first points to the statutory history of the relevant INA provision, specifically that an earlier version of the INA had excluded immigrants "who are polygamists or practice polygamy or advocate the practice of polygamy," while the current version amended this language to exclude only immigrants "coming to the United States to practice polygamy." Pl. Br. at 4-6, 7-8. According to Plaintiff, this development reflects Congress's intent to distinguish between being in a polygamous union from actually practicing polygamy while in the United States. *Id.* at 8. This interpretation, Plaintiff continues, aligns with the dictionary definition of "to practice" as "to carry out, apply." *Id.* Al-Hasani also notes that the State Department's Foreign Affairs Manual, which offers guidance in interpreting the INA's inadmissibility grounds for issuing immigrant and non-immigrant visas provides, in relevant part, as follows:

> To sustain an inadmissibility, an officer would have to find the applicant will maintain a married relationship with more than one spouse while in the United States. If one spouse is traveling with the alien while the other spouse remains overseas, the alien can only be found ineligible, if the offer believes the alien will continue a relationship with the left-behind spouse—for example, visiting the

6

> spouse, providing financial support, keeping in phone contact. If an alien is legally married to a second spouse, but maintains no active relationship with that spouse, then that would not be practicing polygamy and would not sustain an ineligibility.

U.S. Dep't of State, 9 FAM 302.12-2(B)(3)(U). Plaintiff further points to a Board of Immigration Appeals ("BIA") decision holding that in order to characterize a non-citizen as a polygamist, "[i]t is not sufficient that [a non-citizen] should in fact have had more than one spouse at a given time, by virtue of a second marriage undertaken without benefit of divorce"; rather, the non-citizen must "subscribe[] to the historical custom or religious practice called 'polygamy.'" *Matter of G-*, 6 I&N Dec. 9, 11 (BIA 1953).

"The role of the courts in interpreting a statute is to give effect to Congress's intent." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001) (internal citation omitted). The exercise of statutory interpretation begins with the plain language of the statute. *Id.* "[W]here Congress's will has been expressed in language that has a reasonably plain meaning, that language must ordinarily be regarded as conclusive." U*nited States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 95 (3d Cir. 2018) (internal quotation omitted). Where the statutory language is arguably not plain, the court considers it "in the larger context or structure of the statute in which it is found." *Id.* (internal quotation omitted). In attempting to discern Congress's intent, a court "may resort to legislative history as an aid or cross-check." *Id.* (internal citation omitted).

Beginning with the relevant INA and USCIS provisions, the Court must determine whether "practicing polygamy" has a reasonably plain meaning. The meaning of "polygamy" is clear: it is "[t]he state or practice of having more than one spouse simultaneously." POLYGAMY, *Black's Law Dictionary*, (9th ed. 2009). However, the Court agrees with Plaintiff that the verb "to practice" connotes a level of "actual activity." Pl. Br. at 8. Based on the language of the INA and

USCIS regulations alone, it is unclear whether "practicing polygamy" requires something more than the passive state of being legally married to more than one spouse.

Because the plain meaning of "practicing polygamy" is not clear from the statutory language alone, the Court considers the larger context of the statute and the legislative history outlined in Plaintiff's briefing. *See* Pl. Br. at 3-10. First, the Court is not persuaded that the amendments to the previous version of the INA demonstrate that Congress intended to distinguish between *being* in a polygamous union from *practicing* polygamy. Rather, amending the statutory language to bar naturalization for those "coming to the United States to practice polygamy" evinces Congress's intent to "shift the focus" of the polygamy exclusions "from past deeds and belief to anticipated future conduct," as Plaintiff himself notes. Pl. Br. at 6. But here, Al-Hasani has not shown that he practiced polygamy in the past but no longer intends to do so in the future as a resident of the United States. It is undisputed that Al-Hasani currently maintains legal marriages with two spouses and that he does not intend to divorce his first spouse. *See* Pl. SOMF ¶¶ 15, 22; Def. SOMF ¶¶ 11, 15. Therefore, the legislative history does not indicate that USCIS misapplied the INA and USCIS regulations pertaining to polygamy and the good moral character bar to Plaintiff's case.

Moreover, even accepting Plaintiff's contention that the relevant regulations should be interpreted consistently with the State Department's Foreign Affairs Manual—which provides that a non-citizen should not be deemed to be practicing polygamy if he "maintains no active relationship with that spouse"—Plaintiff fails to demonstrate that he falls within these parameters. *See* U.S. Dep't of State, 9 FAM 302.12-2(B)(3)(U). In fact, the State Department manual lists as examples of maintaining an active relationship "visiting the spouse, providing financial support, [and] keeping in phone contact," *id.*, and Al-Hasani by his own admission maintains phone contact

8

and continues to send financial support, Pl. Br. at 9. Similarly, even if the Court were to lend weight to the BIA decision holding that in order to characterize a non-citizen as a polygamist, the non-citizen must "subscribe[] to the historical custom or religious practice called 'polygamy,'" *id.* at 9-10, Al-Hasani merely contends that his "marital history…of successive singular unions without intervening divorce," is separate from the "custom" of polygamy, *id.* at 10. He has not, however, shown that concurrently remaining in two legal marriages does *not* constitute subscribing to the custom of polygamy.

In sum, Al-Hasani has not carried his burden of proving that he does not fall within the category of individuals barred from a finding of good moral character as a result of practicing polygamy. *See Leiva*, 230 F. Supp. 3d at 414. USCIS did not misapply the INA and relevant USCIS regulations.

### B. Whether USCIS's Interpretation of the Good Moral Character Regulations Contravenes the INA

Plaintiff further contends that interpreting the relevant USCIS regulations to bar him from a finding of good moral character would contravene the INA. Pl. Br. at 12-13. In support of this argument, Plaintiff recites the two-part *Chevron* test and thus appears to argue that USCIS's interpretation of the INA is impermissible under *Chevron* without ever explicitly articulating such a position. *Id.* "[C]ircuits are split on whether the courts, in their *de novo* review of naturalization denials under 8 U.S.C. § 1421(c), should give *Chevron* deference to agency interpretations." *Calderon v. Johnson*, Civ. No. 16-0383, 2017 WL 131575, at *3 (D.N.J. Jan. 13, 2017). Moreover, the Court is not aware of Third Circuit precedent instructing whether district courts should grant *Chevron* deference in such instances of *de novo* review under 8 U.S.C. § 1421(c).

However, even assuming that the Court should engage in a *Chevron* analysis, the Court is not persuaded that USCIS's interpretation of the relevant regulations is impermissible. Plaintiff

asserts that the "only way to understand" the statutory language providing that a non-citizen is inadmissible for naturalization if he is "coming to the United States to practice polygamy," is to mean that "he either came to the United States to practice polygamy or actually entered into or maintained polygamous unions here in the United States or by traveling abroad while resident in the United States." Pl. Br. at 12-13. But Plaintiff cites to no case law in support of his position that USCIS's construction of the INA is impermissible under the *Chevron* deference standard. Moreover, another district court considering the USCIS regulation at issue found that it was not "an unreasonable interpretation of the INA's exclusion of 'practicing polygamists.'" and was entitled to *Chevron* deference. *Hassan v. Johnson*, 93 F. Supp. 3d 457, 465 (E.D. Va. 2015); *see also United States v. Jean-Baptiste*, 395 F.3d 1190, 1194 (11th Cir. 2005) (finding that a related provision of the USCIS regulations was entitled to *Chevron* deference). Thus, USCIS's interpretation of the relevant regulations as barring Al-Hasani from a finding of good moral character on the grounds that he is a practicing polygamist is not in contravention of the INA.

V.  **CONCLUSION**

For the foregoing reasons, Defendants' cross-motion for summary judgment, D.E. 19, is **GRANTED**, and Plaintiff's cross-motion for summary judgment, D.E. 20, is **DENIED**. An appropriate Order accompanies this Opinion.

Dated: February 1, 2022

_____
John Michael Vazquez, U.S.D.J.